IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL JACKSON | CRIMINAL ACTION FILE NO.<br><br>1:16-CR-427-AT-JKL-8 |

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

This Order and Non-Final Report and Recommendation addresses Defendant Michael Jackson's Motion for Bill of Particulars. [Doc. 609.] For the following reasons, the Court **DENIES** the motion.[1]

---

[1] Also pending before the Court is Jackson's Motion to Suppress All Evidence Collected Pursuant to the Stored Communications Act. [Doc. 608.] On August 17, 2018, the Court directed Jackson to perfect the motion by September 12, 2018, and address the applicability of the good faith exception to the exclusionary rule. [Doc. 654 at 4.] Jackson requested, and the Court granted, an extension of the deadline to November 12, 2018. [Docs. 695, 713.] Jackson did not, however, perfect the motion. Accordingly, the Court deems the motion abandoned and **RECOMMENDS** that the motion to suppress be **DENIED**. *See United States v. Richardson*, 764 F.2d 1514, 1526-27 (11th Cir. 1985) ("A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented," and thus, a "trial court may refuse a defendant's . . . motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief."); *see also United States v. Chavez-Maciel*, No. 1:10-CR-00490-TCB-LTW, 2012 WL 6742323, at *20 (N.D. Ga. Dec. 7, 2012) (recommending denial of

## I. SUMMARY OF CHARGES AGAINST JACKSON

Jackson is charged in this case with the federal crimes of Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy (Count 1); conspiracy to commit Violent Crimes in Aid of Racketeering Activity ("VICAR")

---

preliminary motion to suppress as abandoned after arguments were not perfected upon court order), *report and recommendation adopted*, 2012 WL 6738771 (N.D. Ga. Dec. 31, 2012); *United States v. Shorr*, No. 1:07-CR-182-1-TWT, 2008 WL 655994, at *1 (N.D. Ga. Mar. 10, 2008) (same), *report and recommendation adopted*, *id.*

But even considering the merits of the unperfected motion, it is due to be denied. Citing *Carpenter v. United States*, 138 S.Ct. 2206 (2018), Jackson argues that the government's seizure of any and all evidence "pursuant to the Stored Communications Act" is a search that implicates the Fourth Amendment and should be suppressed under the exclusionary rule because the government did not obtain a warrant. [Doc. 608 at 1.] Shortly after the *Carpenter* decision was issued, the Eleventh Circuit applied the good-faith exception to the exclusionary rule to hold that historical cell site records that the government obtained using an order before *Carpenter* was issued were not subject to suppression. *United States v. Joyner*, 899 F.3d 1199, 1205 (11th Cir. 2018). In the case at bar, any orders authorizing the government to obtain records under the Stored Communications Act pertinent to this case would have predated *Carpenter* and, at the time, the law in this Circuit was that communications records obtained under the Stored Communications Act could be obtained by court order without a search warrant. *See United States v. Davis*, 785 F.3d 498, 511 (11th Cir. 2015) (en banc) (holding that "the government's obtaining a § 2703(d) court order for the production of [defendant's telephone company's] business records did not violate the Fourth Amendment"). Jackson presents no argument to suggest that any such orders were invalid at the time they were entered, much less that the good faith exception to the exclusionary rule should not apply here. Accordingly, Jackson's unperfected motion should be denied on this additional basis.

murder (Count 7); conspiracy to distribute controlled substances (Count 8); and possession of methamphetamine and marijuana with intent to distribute (Count 11). [Doc. 33 (Superseding Indictment).]  In Count 1, the superseding indictment alleges that Jackson was a member of the Nine Trey Gangsters, a street gang with members in New York, Georgia, and other southeastern states. [*Id.* at 3-4, 14.] The gang allegedly traces its origins to the United Blood Nation, a gang alliance that formed at Rikers Island in New York in the early 1990s that is also loosely affiliated with the Bloods gang of Los Angeles. [*Id.* at 3.]  The superseding indictment alleges that the Nine Trey Gangsters operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4). [*Id.* at 12.]

As to Jackson's personal participation in the RICO conspiracy, the superseding indictment alleges that Jackson was involved in a plan to retaliate against and kill rival gang members. Specifically, it is alleged that on or about September 26, 2016, Jackson and fellow gang members Joseph Riley and Tyrone Clark arranged to have other gang members meet up with gang member Tashied Reed to go to a rival gang member's house to recover stolen money and kill rival

gang members who pointed firearms at Reed earlier in the day (Overt Act 95).[2] [Doc. 33 at 35-36.]

The superseding indictment also alleges that Jackson was involved in numerous drug-related overt acts. Specifically, on or about September 8, 2016, Jackson and fellow gang members Khajavius Mitchell and Cetera Bowles-Griffin discussed how to repackage two quarter-pound packages of marijuana that Bowles-Griffin had received from Riley, another alleged gang member, so the drugs could be sent to Jackson, who was incarcerated in a Georgia state prison (Overt Act 38). [Doc. 33 at 25.]  Then, on or about September 17, 2016, Mitchell allegedly distributed marijuana to Jackson and others (Overt Act 61).  [*Id.* at 29.]

It is also alleged that on or about September 20, 2016, Mitchell and Bowles-Griffin sold Jackson $1,800 worth of marijuana (Overt Act 69) and that Gary Sartor (also an alleged gang member) and Mitchell sold Jackson two ounces of methamphetamine (Overt Act 70). [Doc. 33 at 30.] The following day, September 21, 2016, Jackson allegedly sent a wire transfer of $485.20 to Bowles-Griffin via PayPal (Overt Act 73), and Bowles-Griffin then texted Sartor that she had received

---

[2] The VICAR conspiracy charge in Count 7 is based on Jackson's alleged conduct on September 26, 2016. [Doc. 33 at 46.]

$500 from Jackson as payment for methamphetamine that Sartor had provided Jackson through Bowles-Griffin (Overt Act 74).  [*Id.* at 31.]

On September 27, 2016, Jackson and Clark allegedly discussed having narcotics delivered to a correctional officer at Dodge State Prison (Overt Act 101). [Doc. 33 at 36.]  Between November 1 and November 3, 2016, Jackson, along with Sartor, Riley and an "associate" obtained methamphetamine and marijuana, which they then packaged so that it could be smuggled into Dodge State Prison by corrections officer Fred Arceneaux (Overt Act 113).  [*Id.* at 37.]  On November 4, 2016, Sartor and Riley allegedly supplied Monique Preston with methamphetamine and marijuana on behalf of Jackson, who had purchased the drugs from Sartor, and Preston and another individual associated with Jackson then delivered the drugs to Arceneaux (Overt Act 115).[3]  [*Id.* at 38.]

The superseding indictment also contains a notice of enhanced sentencing as to Jackson.  Specifically, it is alleged that Jackson and others joined and remained in the RICO conspiracy knowing and agreeing that members of the enterprise would engage in acts in involving murder.  [Doc. 33 at 41.]  It is also alleged that

---

[3] Overt Act 115 also forms the basis for Count 11, the possession of methamphetamine and marijuana with intent to distribute charge. [Doc. 33 at 49.]

Jackson and others joined and remained in the RICO conspiracy knowing and agreeing that members of the enterprise would manufacture, distribute, and possess with intent to distribute controlled substances, including more than 500 grams of a mixture and substance containing a detectible amount of methamphetamine. [*Id.* at 41-42.]

## II.   MOTION FOR BILL OF PARTICULARS

Jackson identifies twenty separate requests for information in his motion for a bill of particulars.  The requests break down into seven separate categories:

> 1.  Requests for detail concerning Jackson's involvement in relation to the predicate RICO offenses identifies in Count 1, including: "Mr. Jackson's knowledge or participation was regarding each of the alleged predicate offenses, and . . . any facts or allegations linking Mr. Jackson to those offenses"; "how and when Mr. Jackson agreed that a conspirator would commit any act in the conduct of the affairs of the enterprise, and . . . any evidence supporting those allegations"; "how any alleged act of racketeering activity benefitted the enterprise, and how Mr. Jackson knew of, approved of, or participated in any act of racketeering activity, and . . . any evidence supporting those allegations." [Doc. 609 at 2-3 (requests 1-3).]
>
> 2.  Requests for detail concerning overt acts, including the identity of any overt acts in which Jackson allegedly participated and the evidence supporting overt acts 38, 61, 69, 70, 73, 74, 95, 101, 113, and 115. [Doc. 609 at 3-6 (requests 4-14).
>
> 3.  Requests for "all evidence supporting" the allegations in the notice of enhanced sentencing. [Doc. 609 at 6 (requests 15-16).]

4. A request for the government to "identify specifically all evidence" supporting the allegations in Count 7 (the VICAR conspiracy charge) that Jackson "intentionally and knowingly conspire[d] to murder Good Fellas gang members" "for the purpose of maintaining and increasing position in [Nine Trey Gangsters]" and "all evidence regarding how the conspiracy allowed Mr. Jackson to maintain or increase his position in [Nine Trey Gangsters]." [Doc. 609 at 6-7 (request 17).

5. A request that the government "identify specifically all evidence" that supports "any allegation" that Jackson was a member of the Nine Trey Gangsters. [Doc. 609 at 7 (request 18).]

6. A request that the government "identify specifically" Jackson's knowledge and participation in the conspiracy alleged in Count 8 to "distribute and possess with intent to distribute a controlled substance," and to "identify all evidence supporting this allegation." [Doc. 609 at 7 (request 19).]

7. A request that the government "identify specifically Mr. Jackson's knowledge and participation in the alleged possession of marijuana and methamphetamine for distribution on November 4, 2016, and identify all evidence supporting this allegation." [Doc. 609 at 7 (request 20).]

The government responds that Jackson's motion is an impermissible attempt to compel the government to disclose its theory of the case, the evidence it intends to use at trial, and the identities of witnesses it intends to call at trial. [Doc. 763 at 3-4, 7-10.] The government also points out that, as to the RICO conspiracy charge, it is not required to prove any overt acts. [*Id.* at 3-4.]

7

Federal Rule of Criminal Procedure 7(f) authorizes the Court to direct the government to file a bill of particulars.  "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense."  *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir.) (quotation omitted), *cert. denied*, 138 S. Ct. 379 (2017).  General discovery is not a valid reason for seeking a bill of particulars, *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981), nor is it "'designed to compel the government to [provide a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial,'" *United States v. Roberts*, 174 F. App'x 475, 477 (11th Cir. 2006) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)).  Further, "the defendant [is not] entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection."  *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).  "The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars," and as a result,

8

the "mere statement that the defendant will be prejudiced . . . is insufficient." *United States v. Reddy*, No. 1:09-CR-0483-ODE-AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010) (citing *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998)), *report and recommendation adopted in pertinent part*, 2010 WL 3211029 (N.D. Ga. Aug. 11, 2010); *see also United States v. Blitch*, No. 5:08-CR-40(HL), 2009 WL 973359, at *5 (M.D. Ga. Apr. 9, 2009) (citing *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979)). The grant or denial of a bill of particulars rests within the sound discretion of the trial court. *United States v. Draine*, 811 F.2d 1419, 1421 (11th Cir. 1987); *Colson*, 662 F.2d at 1391.

The first category of requests—seeking information about Jackson's involvement in the predicate acts underlying the RICO conspiracy charge and the formation of the alleged conspiracy itself—is not within the proper scope of a bill of particulars. "'As applied to a charge of conspiracy, [] the view virtually universally held is that the defendant is not entitled to particulars regarding the formation of the conspiracy; [the] exact time and place of overt acts and the names and addresses of persons present; the details concerning how and when the conspiracy was formed or when each participant entered the conspiracy.'" *United States v. Martin*, No. 1:16-cr-2018-LMM-RGV, 2016 WL 11489244, at *7 (N.D.

Ga. Nov. 16, 2016) (alterations in original) (quoting *United States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994)), *report and recommendation adopted sub. nom. United States v. Shannon*, 2017 WL 219393 (N.D. Ga. Jan. 19, 2017). What's more, as recited above, the superseding indictment provides detail concerning Jackson's alleged involvement in the RICO conspiracy, including his participation in drug transactions and one instance of conspiracy to murder rival gang members. The government has also provided additional detail in its response to Jackson's motion, including that discovery produced in this case "is replete with examples of [Jackson's] leadership position within [the Nine Trey Gangsters]." [Doc. 763 at 8.] The government additionally explains that its theory is that by virtue of Jackson's leadership role in the gang and the gang's "hierarchy and rules" that he knew that conspirators would commit two racketeering acts. [*Id.*] Accordingly, the Court is not persuaded that additional details are necessary to enable Jackson to prepare his defense, avoid surprise, or plead double jeopardy in a later proceeding.

The second category of requests, seeking details concerning the overt acts, is similarly unsuitable for a bill of particulars because the superseding indictment and the government's response to Jackson's motion provide sufficient detail to

Jackson, and information about the overt acts can be obtained from the discovery in this case. In addition, Jackson is not entitled to additional detail regarding overt acts because overt acts are not elements of a RICO conspiracy. *See Salinas v. United States*, 522 U.S. 52, 64 (1997) ("The RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act . . . ."); *see also United States v. Henley*, No. 1:16-cr-151-LMM-JFK, 2017 WL 2952821, at *16 (N.D. Ga. May 19, 2017) (denying motion for bill of particulars seeking details concerning overt acts taken in furtherance of extortion and drug conspiracies), *report and recommendation adopted*, 2017 WL 2918954 (N.D. Ga. July 7, 2017); *United States v. Goldenshtein*, No. 1:10-cr-323-TCB-RGV, 2011 WL 1321573, at *13 (N.D. Ga. Feb. 22, 2011) (noting, in a drug conspiracy case, that "[a] bill of particulars cannot be used to ferret out additional overt acts not listed in the indictment, as long as the indictment alleges the required number of overt acts under the statute being charged"), *report and recommendation adopted*, 2011 WL 1257147 (N.D. Ga. Apr. 1, 2011); *United States v. Leiva-Portillo*, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *15 (N.D. Ga. June 12, 2007) ("Case law is also clear that the Government is not required to identify . . . specific acts or

overt acts done in furtherance of a charged conspiracy by particular defendants."), *report and recommendation adopted*, *id.* at *1.

As to third category of requests—which seek additional detail concerning the sentencing enhancement provisions—the Court is satisfied that the indictment contains sufficient detail regarding the alleged murder and drug trafficking charges to enable Jackson to understand the government's theory.

Jackson's fourth category of requests should also be denied because it essentially seeks discovery relating to the VICAR conspiracy charge and an explication of the government's theory of the case. Again, the operative indictment in this case is sufficient to enable Jackson to prepare his defenses, avoid surprise at trial, and avoid double jeopardy in that it alleges that on September 26, 2016, Jackson and other alleged leaders of the Nine Trey Gangsters allegedly ordered others within the gang to murder rival gang members in retaliation for pointing firearms at a fellow Nine Trey Gangster. [Doc. 33 at 34-35.] No further information is warranted under a bill of particulars.

The fifth category, which consists of a single request for the government to "identify specifically all evidence" that supports "any allegation" that Jackson was a member of the Nine Trey Gangsters, does not warrant a bill of particulars, as it is

clearly a request for discovery. In any event, the government has provided additional information in its response, including that Jackson admitted during a probation interview in 2013 that he was an "NTG Fire line Three Star, and that he joined NTG in 2002 when he was 11 years[] old." [Doc. 763 at 10.] The government additionally states that at least one witness will confirm his status within the gang and that a gang roster seized from codefendant Gordon Evans's prison cell reflects that Jackson reported to codefendant Gary Sartor. [*Id.*]

The sixth and seventh categories of requests seek detail concerning Jackson's involvement in the alleged drug distribution conspiracy and his possession of marijuana and methamphetamine for distribution on November 4, 2016, charged in Counts 8 and 11 of the superseding inducement. The Court does not see a need for a bill of particulars with respect to those counts. The superseding indictment contains sufficient detail concerning Jackson's alleged possession and distribution of controlled substances over a three-month period in 2016.

In sum, the Court finds that Jackson has not met his burden to show that a bill of particulars is necessary for him to prepare his defenses, minimize surprise at trial, and enable him to plead double jeopardy if later prosecuted for the same offense. Accordingly, the motion for a bill of particulars [Doc. 610] is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Motion for Bill of Particulars [Doc. 610] be **DENIED**. It is also **RECOMMENDED** that Jackson's Motion to Suppress All Evidence Collected Pursuant to the Stored Communications Act [Doc. 608] be **DENIED**.

I have now addressed all referred pretrial matters relating to Defendant Jackson and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL** as to this defendant.[4]

IT IS SO ORDERED AND RECOMMENDED this 29th day of August, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[4] Since matters pertaining to Jackson's codefendants still are pending, the District Court is not required to place his case on the trial calendar at this time. 18 U.S.C. § 3161(h)(6).