IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| KHAJAVIUS MITCHELL (1) | : |
| GORDON EVANS (2) | : |
| PATRICK CAPLE (3) | : |
| GARY SARTOR (4) | : CRIMINAL ACTION NO. |
| TYRONE CLARK (5) | : 1:16-CR-427-AT |
| MICHAEL JACKSON (8) | : |
| BRANDON ASBERRY (9) | : |
| ALFONZO NALLS (13) | : |
| ERICK BALCAZAR (24) | : |
| CEDRICK HILL (27), | : |
| | : |
| Defendants. | : |
| | : |

**<u>ORDER</u>**

There are presently several of the Magistrate Judge's Reports and Recommendations (R&Rs) pending before the Court. [Docs. 1034, 1055, 1057, 1059, 1064, 1069, 1091, 1253]. Defendants have variously objected. [Docs. 1049, 1054, 1063, 1081, 1082, 1086, 1109, 1113].

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. <u>United States v. Raddatz</u>, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected portion under a "clearly erroneous" standard. "Parties filing objections to a magistrate's report

and recommendation must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

Some of the R&Rs listed above also include orders denying non-case-dispositive motions. Pursuant to Rule 59 of the Federal Rules of Criminal Procedure, the Court considers Defendants' timely objections to the Magistrate Judge's denial of such motions and will modify or set aside any part of the Magistrate Judge's order that is contrary to law or clearly erroneous. See 28 U.S.C. § 636(b)(1)(B).

**July 12, 2019, R&R [Doc. 1034]**

On July 12, 2019, the Magistrate Judge entered an R&R recommending denial of Defendant Mitchell's motion to suppress wiretap evidence, [Doc. 779]; Defendant Sartor's preliminary motion to suppress wiretap evidence, [Doc. 526], and his perfected motion to suppress wiretap evidence, [Doc. 590]; Defendant Clark's amended motion to suppress wiretap evidence, [Doc. 747]; Defendant Jackson's preliminary motion to suppress all conversation and evidence seized on (TT3)[1] pursuant to court ordered electronic interceptions, [Doc. 607], and his motion to suppress wiretap evidence, [Doc. 827]; and Defendant Balcazar's particularized motion to suppress conversation and evidence seized pursuant to court ordered electronic interceptions, [Doc. 702], and his amended motion to suppress conversations and evidence seized pursuant to court ordered electronic

---

[1] This Court adopts the defined terms used by the Magistrate Judge in the R&Rs.

interceptions, [Doc. 797]. Jackson, [Doc. 1049], Clark, [Doc. 1054], Mitchell, [Doc. 1063], and Sartor, [Doc. 1082], have also filed objections.

As a general matter, this Court notes that the arguments raised in Defendants' objections raise issues that were all squarely and comprehensively addressed by the Magistrate Judge. See Chester v. Bank of Am., N.A., 1:11-CV-1562-MHS, 2012 WL 13009233 at *1 (N.D. Ga. Mar. 29, 2012) ("[G]eneral objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object.").

In response to the arguments presented in the objections, this Court agrees with the Magistrate Judge—and the considerable weight of persuasive case law upon which the Magistrate Judge relied—that Defendants Sartor, Jackson, and Mitchell lack standing to challenge the interception of communications over contraband cellular telephones they used while they were incarcerated. This Court thus agrees that Jackson and Sartor lack standing to challenge any of the wiretaps in this case, and that Mitchell lacks standing to challenge TT3.

With respect to Defendants' staleness argument regarding TT1, this Court agrees with the Magistrate Judge that the information provided in the Affidavit of Paul Szabo clearly established probable cause to believe that Defendants were engaged in ongoing—and wide-ranging—criminal activity. Indeed, as discussed by the Magistrate Judge, the Government demonstrated that Defendants, who are members of the Nine Trey Gangster Bloods (NTG), engaged in ongoing

3

racketeering activity in February, 2016, and in June/July, 2016.  It was thus reasonable to conclude probable cause existed to believe that the gang's activity continued into August, 2016, when the TT1 warrant was issued.

This Court further agrees that, contrary to Defendants' arguments and their overly-expansive view of the necessity requirement, the Government properly established necessity.  "[A] comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap." United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 (11th Cir. 2010).  Rather, the affidavit in support of the wiretap need only "inform the issuing judge of the difficulties involved in the use of conventional techniques." United States v. Pecheco, 489 F.2d 554, 565 (5th Cir. 1974).  The stated goal of the investigation was to identify and target as many of the members of NTG—a large, sophisticated criminal organization—as possible.  The Government established the danger that the organization posed to the public and, especially, to prisons throughout the state of Georgia.  While the goals of the investigation were indeed broad, based on the information that the Government had already amassed, the Government established that those goals were realistic.  As discussed at length by the Magistrate Judge, the Government also demonstrated that the wiretap warrants at issue were necessary based on well-documented limitations posed by more traditional methods of investigation.  Accordingly, this Court agrees that the Government properly demonstrated necessity.

As this Court concludes that the Magistrate Judge was correct in determining that the TT1 warrant was lawfully issued, this Court further finds that, as a result, the TT2 and TT3 warrants, which relied on information from the interception of calls and messages from TT1, were also valid.  Because of the wide-ranging criminal activity alleged by the Government, this Court disagrees with the notion that, because on the success of the TT1 warrant in leading to arrests and the observation of a methamphetamine transaction, the TT3 warrant was not necessary.  The Magistrate Judge addressed that argument at length, [Doc. 1034 at 83-84], and further discussion is not necessary.

For the foregoing reasons, the July 12, 2019, R&R, [Doc. 1034], is **ADOPTED** as the order of this Court and Defendants' motions to suppress, [Docs. 526, 590, 607, 702, 747, 779, 797, 827], are **DENIED**.

**August 1, 2019, R&R [Doc. 1055]**

On August 1, 2019, the Magistrate Judge issued three R&Rs.  In the first of those, [Doc. 1055], the Magistrate Judge recommends denying Defendant Asberry's motions to suppress physical evidence, [Doc. 636], and to strike surplusage from the indictment, [Doc. 639].  The Magistrate Judge also denied Asberry's motions for a bill of particulars, [Doc. 635], for timely disclosure of deals and information about Government witnesses, [Doc. 637], and for timely disclosure of confidential informants with related evidence, [Doc. 638].  Asberry has filed his objections.  [Doc. 1086].

**Asberry's Motion to Suppress**

First discussing the Magistrate Judge's recommendation that the motion to suppress be denied, Asberry[2] was arrested during a traffic stop on September 26, 2016. Upon searching his car, police found an assault rifle magazine, a box of rifle ammunition, and a SKS assault rifle. As indicated by the above discussion regarding wiretaps, investigators had been monitoring gang members' phone calls. In the R&R, the Magistrate Judge describes a flurry of calls among gang members on that September 26th regarding an effort to retrieve money that had been stolen from them. The investigators understood that Asberry and others, while armed with guns, were en route to a house in the Mechanicsville neighborhood of Atlanta, used by a rival gang, where the NTG members intended to retrieve the money, likely with violence or threat of violence. In one of the calls, a gang member stated that the thief of the money should be killed. Visual surveillance of an NTG hideout also indicated that one gang member stopped by to pick up a firearm before proceeding to Mechanicsville. Law enforcement officers initiated the traffic stop of Asberry's car to prevent violence.

Based on the evidence presented by the Government, the Magistrate Judge "readily" concluded that police had reasonable suspicion under Terry v. Ohio, 392 U.S. 1 (1968), to justify the stop. Once the stop was made, the Magistrate Judge concluded that the search of Asberry's vehicle was supported by sufficient

---

[2] Asberry was one of five individuals arrested in connection with the incident.

probable cause that it contained firearms and ammunition. In any event, the box of rifle ammunition and the assault rifle magazine were in plain view of police.

In his objections, Asberry raises three arguments. He first contends that the Government did not establish that agents relied on the intercepted telephone calls because it did not provide the testimony of law enforcement personnel who actually heard the telephone conversations regarding the events of that day. He further argues that the agents involved in the traffic stop had no direct knowledge of the content of the intercepted telephone conversations. However, as the Magistrate Judge found, the two investigators who testified and who were involved in the traffic stop stated that they were relying on information overheard in the wiretaps and relayed to them by other agents. There is no "hearsay rule" related to probable cause determinations. Rather, "probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest, when there is some degree of communication between the two." United States v. Ashley, 569 F.2d 975, 983 (5th Cir. 1978) (quotation citation omitted); see also United States v. Allison, 953 F.2d 1346, 1350 (11th Cir. 1992) ("Where there is at least minimal communication between different officers, the collective knowledge of the officers determines probable cause.").

Asberry next argues that the wiretap and visual surveillance information the police relied on required interpretive speculation. For example, one of the participants in the intercepted conversations instructed Asberry to obtain a "stick." Agents interpreted stick to mean firearm. In addition, one female gang

7

member stopped at the gang hideout and another gang member placed an item wrapped in cloth in her car, and agents surmised that a firearm was wrapped in the cloth. Finally, at one point, a gang member stated that another would bring "the Draco," and agents similarly concluded that the Draco was a firearm.

Given the circumstances and context of the intercepted telephone conversations, this Court finds the agents' interpretations to be reasonable. Agents had ample basis to know that NTG was a violent gang and that its members possessed firearms. For agents to assume that a members of a violent gang would bring guns to confront members of a rival gang to retrieve stolen money is not an example of unreasonable speculation.[3]

Asberry next complains that, after his arrest, an agent applied for warrants to arrest the five individuals. The agent stated in the affidavit that the vehicle stop was based on information obtained from a "confidential/reliable informant." Nothing in the warrant indicated that the real source of information was a series of intercepted phone calls rather than a human being. As the Magistrate Judge correctly determined, however, the agent testified that he explained to the judge who issued the warrant that the source of the information was from a wiretap, and the Magistrate Judge credited that testimony. Moreover, the warrants were issued after the traffic stop and thus have no bearing on Asberry's motion to suppress.

---

[3] As an aside, this Court points out that Century International Arms, Inc., manufactures a AK-47-type pistol called a Draco. See www.centuryarms.com /draco-pistol.

**Asberry's Motion to Strike Surplusage**

In his motion to strike surplusage, [Doc. 639], Asberry contends that this Court should strike numerous sections from the superseding indictment. The Magistrate Judge's recommends that the motion be denied because the portions of the indictment that Asberry seeks to strike are relevant to the crimes charged, particularly Count 1 which charges Asberry with participating in a racketeering conspiracy. In his objections, Asberry merely repeats the arguments that he made to the Magistrate Judge without demonstrating (or even arguing) that the Magistrate Judge erred, and this Court concludes that the Magistrate Judge's resolution of those arguments was correct.[4]

**Asberry's Motions for a Bill of Particulars, Timely Disclosure of Information About Government Witnesses, and for Timely Disclosure of Confidential Informants**

In denying Asberry's motion for a bill of particulars, the Magistrate Judge concluded that Asberry is not entitled to information related to individuals identified only by their initials in the indictment because that information is available in the discovery information provided by the Government and that the Government has pointed to specific discovery materials to identify certain of the individuals. The Magistrate Judge further concluded that Asberry is not entitled to additional information regarding overt acts listed in Count 1 (RICO) and found that (1) the information from Counts 2 through 7 sufficiently inform Asberry

---

[4] This Court will, however, allow Asberry to argue at trial that certain portions of the copy of the superseding indictment given the jury during deliberations should be redacted as unfairly prejudicial.

9

regarding the sentence enhancement notice in Count 1 so that he can prepare his defense and avoid surprise, see United States v. Davis, 854 F.3d 1276, 1293 (11th Cir. 2017), (2) Count 7 (VICAR murder conspiracy) contains sufficient information to put Asberry on notice of the crime that the Government alleges that he committed, and (3) Count 8 (drug distribution and possession conspiracy) likewise contains sufficient information, and the Government has referred Asberry to specific alleged overt acts which provide more information about Asberry's specific role in the conspiracy.

    As a general matter, this Court has reviewed the superseding indictment and concludes that it properly puts Defendants on notice of the crimes they are alleged to have committed.[5] In his objection to the Magistrate Judge's denial of his motion for a bill of particulars, Asberry argues that the Government does not have a compelling reason to withhold much of the information that he seeks. However, Asberry has the burden to demonstrate that disclosure is necessary, and as the Magistrate Judge concluded, this Court cannot compel the Government to provide information that the defendant has access to from another source. See United States v. Roberts, 174 Fed. Appx. 475, 477 (11th Cir. 2006) ("A bill of particulars is not required where the information sought has already been provided by other sources."). In response to Asberry's objections regarding the Magistrate Judge's denial of information related to overt acts, this Court agrees with the Magistrate Judge's conclusion that because overt acts are

not elements of RICO, the Government cannot be compelled to provide information regarding them.

Regarding the Government's notice that it intends to seek an enhanced sentence under Count 1 based on the RICO conspiracy to murder, Asberry objects that the notice fails to identify the persons that NTG members intended to murder. As was explained by the Magistrate Judge, that information is available from other portions of the indictment in conjunction with discovery material. As to Asberry's contention that Count 7 (VICAR murder conspiracy) fails to identify the intended murder victim, that victim is likely unknown. Count 7 relates to the September 26, 2016, effort—discussed above—in which NTG members went to the Mechanicsville neighborhood to confront rival gang members about stolen money. The NTG members did not know who would be at the rival gang's house, and the Government will apparently attempt to prove that the NTG members intended to murder whoever was at the house.

More generally, as noted by the Magistrate Judge, the Government pointed Asberry to specific items in the discovery materials where he could find much of the information he requests, [see Doc. 763 at 12-14], and Asberry has not shown that the Government's disclosures are insufficient.

---

[5] This conclusion also applies to Clark's and Sartor's motions for a bill of particulars discussed below.

As to the Magistrate Judge's denial of Asberry's two motions seeking information regarding witnesses, confidential informants, Giglio material, and Jencks Act material, this Court agrees that Asberry has failed to demonstrate that he is entitled to early release of that information.[6] In his objections, Asberry contends that the Government has not offered any rationale for withholding the information. However, as the Magistrate Judge found, the Government stated that early release of the material would create a substantial risk of harm to witnesses if their identities were disclosed prematurely. Indeed, given the allegations in the indictment about violent, retaliatory actions taken by NTG members against people cooperating with law enforcement, [see Doc. 33 at 6, 16-17, 21], the Government's worry is well-founded. For the reasons discussed, the R&R, [Doc. 1055], is **ADOPTED** as the order of this Court, and Asberry's motions to suppress physical evidence, [Doc. 636], and to strike surplusage from the indictment, [Doc. 639], are **DENIED**. The Magistrate Judge's denial of Asberry's motions for a bill of particulars, [Doc. 635], for timely disclosure of deals and information about Government witnesses, [Doc. 637], and for timely disclosure of confidential informants with related evidence, [Doc. 638], is **AFFIRMED**.

---

[6] The Government has stated that it intends to comply with its obligations under the Jencks Act, Giglio, and the rules requiring disclosure of the names of and information about witnesses and confidential informants two weeks before trial as it is authorized to do. While this Court agrees with the Magistrate Judge that Asberry is not now entitled to the information he seeks, this Court is willing to address a motion by Asberry before trial seeking additional time to prepare his defense after he has reviewed the information provided by the Government and an appropriate pretrial disclosure schedule, assuming trial is genuinely on the cusp of proceeding.

**August 1, 2019, R&R [Doc. 1057]**

In his second R&R from August 1, 2019, [Doc. 1057], the Magistrate Judge recommends that Defendant Clark's motions to suppress evidence seized in connection with a traffic stop, [Doc. 597], and to suppress statements, [Doc. 839], be granted in part and denied in part. The Magistrate Judge also denied Clark's motion for a bill of particulars. [Doc. 600]. Clark has filed his objections. [Doc. 1081].

**Clark's Motions to Suppress**

The Magistrate Judge concluded that a state trooper violated Clark's rights when he searched Clark's wallet during a traffic stop and that the money found in the wallet should be suppressed. The Magistrate Judge further concluded, however, that a large wad of cash that was in Clark's pocket that the trooper found during a routine pat-down and a gun that the trooper found during an inventory search of Clark's car were not subject to suppression.

Clark objects to the Magistrate Judge's conclusions regarding the wad of cash and the gun. He contends that the trooper could not have believed that the wad of cash was a weapon and the trooper had no reason to remove it from Clark's pocket. However, the Magistrate Judge found that the trooper had ample reason to believe that Clark posed a threat to his safety. The Magistrate Judge also credited the trooper's testimony that the wad of cash was so large that the trooper could not tell if Clark had anything else in his pocket. Accordingly, this

Court agrees that the trooper was reasonable under Terry v. Ohio, 392 U.S. 1 (1968), in removing the wad of cash.

Clark further argues that the gun should be suppressed because he contends that the trooper should have called Clark's girlfriend, who was the registered owner of the car, and had her take possession of the car instead of having the car impounded, thereby obviating the need for an inventory search. As the Magistrate Judge found, however, it was night at the time of the traffic stop, and Clark had pulled over at the entrance to an expressway. Accordingly, it was reasonable for the trooper, in his discretion, to decide that he did not want to wait for the girlfriend to show up (or not show up) to retrieve the car. Once he made the decision to impound the car, the trooper was required to perform an inventory search. This Court thus agrees with the Magistrate Judge that the search was reasonable.

The Magistrate Judge also concluded that, during an interrogation by FBI agents at Georgia Classification and Diagnostic Prison in Jackson, Georgia, Clark unambiguously invoked his right to remain silent approximately 28 minutes into the interrogation and that all statements Clark made after that point must be suppressed. In his objections, Clark states that more of the discussion should be suppressed, but the argument is conclusory and Clark has failed to demonstrate that the Magistrate Judge erred.

**Clark's Motion for a Bill of Particulars**

With respect to his motion for a bill of particulars, the Magistrate Judge denied Clark's requests regarding Count 1 (RICO) because they all sought information regarding the overt acts listed in that count. This Court again agrees with the Magistrate Judge's conclusion that because overt acts are not elements of RICO, the Government cannot be compelled to provide information regarding them. The Magistrate Judge further found that, through the discovery information that the Government provided, Clark can determine much of the detail that he seeks related to Count 1 and that the Court will entertain appropriate motions at the pretrial conference that might bear on this issue. With respect to the information that Clark sought related to other counts, the Magistrate Judge denied the request because the discovery information provided by the Government is sufficient to enable Clark to avoid surprise at trial and to understand the allegations against him. See Davis, 854 F.3d at 1293. Clark's objections to the denial of his motion for a bill of particulars are conclusory, and he has thus failed to demonstrate that the Magistrate Judge erred.

For the reasons discussed, the R&R, [Doc. 1057], is hereby **ADOPTED** as the order of this Court, and Clark's motions to suppress evidence seized in connection with a traffic stop, [Doc. 597], and to suppress statements, [Doc. 839], are hereby **GRANTED IN PART AND DENIED IN PART**. The Magistrate Judge's denial of Clark's motion for a bill of particulars, [Doc. 600], is **AFFIRMED**.

**August 1, 2019, R&R [Doc. 1059]**

In the absence of objections, this Court agrees with the Magistrate Judge that Defendants Balcazar's and Hill's motions to suppress, [Docs. 703, 789], are foreclosed by United States v. Joyner, 899 F.3d 1199, 1205 (11th Cir. 2018). According the R&R, [Doc. 1059], is **ADOPTED** as the order of this Court and the motions, [Docs. 703, 789], are **DENIED**.

**August 2, 2019, R&R [Doc. 1064]**

In the absence of objections, this Court agrees with the Magistrate Judge that Defendant Nalls abandoned his motion to suppress custodial statements. This Court further agrees that Nalls has failed to demonstrate that evidence seized pursuant to a warrant authorizing the use of a cell-site simulator and a warrant to search a Samsung cell phone should be suppressed. Accordingly, the R&R, [Doc. 1064], is hereby **ADOPTED** as the order of this Court, and Nalls' motions to suppress, [Docs. 375, 642], are hereby **DENIED**.

**August 9, 2019, R&R [Doc. 1069]**

In his August 9, 2019, R&R, [Doc. 1069], the Magistrate Judge recommends that Defendant Sartor's motion to suppress evidence obtained by the Government from social media accounts, [Doc. 582], be denied. The Magistrate Judge also denied Sartor's motions for a bill of particulars, [Doc. 493], for disclosure of cooperating sources, [Doc. 511], and for disclosure of deals with cooperating sources, [Doc. 518]. Sartor has objected. [Doc. 1109].

**Sartor's Motion to Suppress**

In his motion to suppress, Sartor seeks suppression of all evidence the government obtained from his social media accounts (including Facebook and Instagram) based on his contention that the affidavit in support of the search warrant for the information was based on communications intercepted pursuant to invalid wiretaps. Sartor further contends that the evidence should be excluded pursuant to Fed. R. Evid. 403 because of unfair prejudice.

As discussed above, the Magistrate Judge concluded that the wiretap evidence should not be suppressed and this Court has adopted that recommendation. Accordingly, Sartor's first argument fails. The Magistrate Judge further concluded that Sartor's Rule 403 argument should be made in a motion in limine at or near trial. In his objections, Sartor briefly restates his argument that the wiretap warrants were flawed and says nothing about his Rule 403 argument.

**Sartor's Motions for a Bill of Particulars and for Disclosure of Information Regarding Confidential Sources**

With respect to the Magistrate Judge's denial of Sartor's motion for a bill of particulars, the Magistrate Judge found that "[t]he superseding indictment clearly sets forth the offenses with which he is charged, and the government has explained to Sartor [in response to Sartor's motion] how it intends to prove those charges and directed him to material disclosed in discovery that will assist him in preparing his defense." [Doc. 1069 at 16]. The Magistrate Judge thus concluded that Sartor has sufficient information to prepare his defense, minimize surprise

17

at trial, and enable him to plead double jeopardy if later prosecuted for the same offense. [Id.]; see Davis, 854 F.3d at 1293. In his objections, Sartor simply repeats his arguments that the various counts against him in the indictment are insufficient, but the Magistrate Judge properly addressed those arguments. Moreover, Sartor fails to discuss or even acknowledge the disclosures that the Government made in response to his motion. [See Doc. 545 at 9-11].[7] As he has not explained how the Government's disclosures were inadequate, Sartor has failed to establish that the Magistrate Judge erred. This Court thus concludes that the Magistrate Judge properly denied Sartor's motion for a bill of particulars.

As to Sartor's motions for disclosure of cooperating sources and for disclosure of deals/inducements for cooperating sources, the Magistrate Judge concluded that, because the Government intends to call its confidential informants and sources as witnesses at trial, Roviaro v. United States, 353 U.S. 53, 59 (1957), does not require the disclosure of the sources by the Government. Regarding the deals/inducements that the Government made with the cooperating sources, the Magistrate Judge concluded that Sartor has not demonstrated that he is entitled to early disclosure of Brady/Giglio material.

Sartor's objections are unavailing. His argument that Roviaro does indeed apply to witnesses that the Government intends to call to testify at trial was fully and correctly addressed by the Magistrate Judge. In any event, Sartor stands to

---

[7] This Court does not address Sartor's request in footnote 7 of his objections to strike surplusage in the indictment. Such a request must be made in a properly filed motion. However, if the

receive the requested information, albeit two weeks before trial instead of sixty-to-ninety days ahead of trial as he requests, and as with the discussion above regarding Asberry's similar motions, this Court credits the Government's concern regarding the safety of cooperating sources.[8]

Having reviewed the record, this Court concludes that the Magistrate Judge is correct. Accordingly, the R&R, [Doc. 1069], is hereby **ADOPTED** as the order of this Court, and Sartor's motion to suppress evidence obtained by the Government from social media accounts, [Doc. 582], is **DENIED**. The Magistrate Judge's denial of Sartor's motions for a bill of particulars, [Doc. 493], for disclosure of cooperating sources, [Doc. 511], and for disclosure of deals with cooperating sources, [Doc. 518], is **AFFIRMED**.

**August 29, 2019, R&R [Doc. 1091]**

In the absence of objections, this Court agrees with the Magistrate Judge, [Doc. 1091], that Defendant Caple has withdrawn his motion to suppress, [Doc. 521]. Accordingly, the R&R, [Doc. 1091], is hereby **ADOPTED** as the order of this Court, and the motion to suppress, [Doc. 521], is **DENIED**.

---

Court finds at trial that there is surplusage in the indictment, it will redact such prior to submission of the indictment to the jury.

[8] As this Court noted in relation to Asberry's similar motions, this Court is willing to address a motion by Sartor before trial seeking additional time to prepare his defense after he has reviewed the information provided by the Government.

**April 1, 2020, R&R [Doc. 1253]**

In the absence of objections, this Court agrees with the Magistrate Judge, [Doc. 1253], that Defendant Evans has failed to demonstrate (1) that he has standing to challenge the electronic evidence that the Government collected because he was using a contraband cell phone while incarcerated, and (2) that the Government failed to establish necessity with respect to the wiretap warrants used against Evans.  Accordingly, the R&R, [Doc. 1253], is hereby **ADOPTED** as the order of this Court, and Evans's motion to suppress intercepted communications, [Doc. 1148], is **DENIED.**

**Conclusion**

To recapitulate, the pending R&Rs, [Docs. 1034, 1055, 1057, 1059, 1064, 1069, 1091, 1253], are hereby **ADOPTED** as the orders of this Court, Defendants' various motions, [Docs. 375, 521, 526, 582, 590, 607, 636, 639, 642, 702, 703, 747, 779, 789, 797, 827, 1148], are **DENIED**, and Defendant Clark's motions, [Docs. 597, 839], are **GRANTED IN PART AND DENIED IN PART** as discussed above.  The Magistrate Judge's denial of certain of the Defendant's motions, [Docs. 493, 511, 518, 600, 635, 637, 638], is **AFFIRMED**.

**IT IS SO ORDERED** this 10th day of July, 2020.

Amy Totenberg
United States District Judge